909 A.2d 226

**ATTORNEY GRIEVANCE COMMISSION of Maryland**

v.

**Alphonzo Jerome BUTLER.**

**Misc. Docket AG No. 27, Sept. Term, 2005.**

Court of Appeals of Maryland.

Oct. 16, 2006.

**2**

Marianne J. Lee, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel for Atty. Grievance Com'n), for petitioner.

Argued before Bell, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

GREENE, J.

The Attorney Grievance Commission of Maryland ("Petitioner"), acting pursuant to Maryland Rule 16–751,[1] filed a

1. Maryland Rule 16–751(a) provides:

Petition For Disciplinary Or Remedial Action against Alphonzo Jerome Butler ("Respondent") on July 22, 2005. The Petition alleged that Respondent, who was admitted to the Bar of this Court on December 17, 1996, violated Rules 1.15 (Safekeeping Property),[2] 8.1 (Bar Admission and Disciplinary Matters),[3] and 8.4 (Misconduct)[4] of the Maryland Rules of Professional Conduct ("MRPC"), Maryland Rules 16–607 (Commingling of Funds)[5] and 16–609 (Prohibited Transac-

(a) Commencement of disciplinary or remedial action. (1) Upon approval or direction of the [Attorney Grievance Commission], Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. MRPC 1.15(a) provides:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

3. MRPC 8.1 in relevant part provides:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not: ·
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

4. MRPC 8.4 in relevant part provides:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;

5. Maryland Rule 16–607 provides:

tions),[6] and §§ 10–306 (Misuse of Trust Money) [7] and 10–606 (Penalties) [8] of the Business Occupations and Professions Arti-

 a. General prohibition. An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b. of this Rule.

 b. Exceptions. 1. An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges, or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 16–610 b 1(D), or (B) enter into an agreement with the financial institution to have any fees or charges deducted from an operating account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.

 2. An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.

 3. Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with the funds held for other clients or beneficial owners.

6. Maryland Rule 16–609 provides:

 An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer.

7. Section 10–306 of the Business Occupations and Professions Article of the Maryland Code provides:

 A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

8. Section 10–606 of the Business Occupations and Professions Article of the Maryland Code provides:

 (a) Practice without admission; misrepresentation.—

 (1) A corporation, partnership, or any other association that violates § 10–601 or § 10–602 of this subtitle is subject to a fine not exceeding $ 5,000.

 (2) An officer, director, partner, trustee, agent, or employee who acts to enable a corporation, partnership, or association to violate § 10–601 or § 10–602 of this subtitle is guilty of a misdemeanor and on

cle of the Maryland Code (2000, 2004 Repl.Vol.). In accordance with Maryland Rules 16–752(a) and 16–757(c),[9] we referred the matter to Judge Nelson W. Rupp, Jr., of the Circuit Court for Montgomery County for an evidentiary hearing and to make findings of fact and conclusions of law. On April 20, 2006, Judge Rupp held a hearing and on April 27, 2006, issued Findings of Fact and Conclusions of Law, in which he found that Alphonzo Jerome Butler had violated MRPC 1.15(a), 8.1(b), 8.4(a), (b), (c), (d), Maryland Rule 16–607, Maryland Rule 16–609, and §§ 10–306 and 10–606 of the Business Occupations and Professions Article of the Maryland Code.

## I.

After an evidentiary hearing, Judge Rupp made the following factual findings and conclusions of law:

> conviction is subject to a fine not exceeding $5,000 or imprisonment not exceeding 1 year or both.
> (3) Except as provided in paragraphs (1) and (2) of this subsection, a person who violates § 10–601 of this subtitle is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $5,000 or imprisonment not exceeding 1 year or both.
> (b) Attorney trust accounts.—A person who willfully violates any provision of Subtitle 3, Part I of this title, except for the requirement that a lawyer deposit trust moneys in an attorney trust account for charitable purposes under § 10–303 of this title, is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $ 5,000 or imprisonment not exceeding 5 years or both.
> (c) Other offenses.—Except as provided in subsections (a) and (b) of this section, a person who violates any provision of this title is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $ 1,000 or imprisonment not exceeding 1 year or both.

9. Maryland Rule 16–752(a) states:

> (a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.
> Maryland Rule 16–757(c) states in pertinent part:
> The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. . . .

## *"FINDINGS OF FACT AND CONCLUSIONS OF LAW*

"Pursuant to an Order of the Court of Appeals dated July 28, 2005, the captioned matter was transmitted to the Circuit Court for Montgomery County to be heard and determined by the undersigned judge of the Seventh Judicial Circuit, in accordance with Maryland Rule 16–757. On August 18, 2005, the Respondent, Alphonzo J. Butler, was personally served with process issued by the Clerk of the Circuit Court for Montgomery County. The Respondent filed his answer to the charges contained in the Petition for Disciplinary or Remedial Action on September 2, 2005.

"On December 15, 2005, the Court entered a Scheduling Order, which provided that all written discovery responses were due by January 6, 2006, that all discovery were to conclude on or before January 17, 2006, that all motions were to be filed on or before February 3, 2006, and set trial for March 9, 2006. The Respondent was personally served with Petitioner's discovery requests—Request for Admission of Fact and Genuineness of Documents, Interrogatories and Request for Production of Documents—on August 18, 2005. The Respondent failed to answer at all Petitioner's discovery requests. On December 20, 2005, the Respondent was served, by first class mail, with a Notice of Deposition for January 12, 2006. The Respondent failed to appear for his deposition and failed to respond to Petitioner's telephone messages and letters requesting to reschedule his deposition. Accordingly, on February 3, 2006, Petitioner filed a Motion for Sanctions against Respondent, which was granted in part by the Court on March 14, 2006. The Respondent neither filed any opposition to Petitioner's Motion for Sanctions nor served Petitioner with any discovery requests.

"The Court rescheduled the hearing to take place on April 20, 2006. Notice thereof was mailed to the Respondent at his last known address. The Respondent failed to appear in court on April 20, 2006. Having considered evidence introduced by counsel for the Petitioner on April 20, 2006, this court now makes the following findings of fact and conclusions of law pursuant to Maryland Rule 16–757(c)[.]

*"Findings of Fact*

"Alphonzo J. Butler (hereinafter 'the Respondent') was originally admitted to the Bar of the Court of Appeals of Maryland on December 17, 1996. The Respondent maintained a law office in Silver Spring, Maryland.

"On May 9, 2002, the Respondent opened an escrow account, titled 'Alphonzo J. Butler, LLC, Attorney Trust Account', Account No. 970069156, (hereinafter 'Attorney Trust Account') with Allfirst Bank, which subsequently merged with Manufacturers and Traders Trust Company (hereinafter 'M & T Bank'). On or about May 10, 2004, the Respondent received $675 from his client Seymour Clarke to pay a child support obligation owed to Mr. Clarke's ex-wife, Jo–Ann Clarke. On May 12, 2004, the Respondent deposited the $675 from Mr. Clarke to his Attorney Trust Account. After the deposit was made, the Respondent's Attorney Trust Account had a balance of $1,307.13.

"On or about May 13, 2004, the Respondent issued from his Attorney Trust Account, on behalf of his client, Mr. Clarke, Check No.2037 made payable to Jo–Ann Clarke in the amount of $675. Check No.2037 was not presented to the bank for payment until June 17, 2004, at which time the Respondent's Attorney Trust Account had only a balance of $62.13. At the time Ms. Clarke presented Check No.2037 of $675 for payment, Respondent had insufficient funds in his Attorney Trust Account to cover the amount of the check. M & T Bank, nevertheless, honored the check, resulting in an overdraft on Respondent's Attorney Trust Account and a negative balance of—$612.87.

"On or about June 25, 2004, Bar Counsel received written notification dated June 18, 2004 from M & T Bank of the overdraft on Respondent's Attorney Trust Account. On June 29, 2004, Bar Counsel sent a letter to Respondent requesting his written response to the June 18, 2004 overdraft notice from M & T Bank of his Attorney Trust Account, including copies of his client ledger cards, deposit slips, canceled checks, and monthly bank statements of his escrow account from the period beginning January 2004 to

June 2004. The Respondent sent his written response dated July 22, 2004 claiming that the overdraft was an 'unintentional bookkeeping error' and a 'mistake.' The Respondent further claimed that he was planning to 'shut down' his solo private practice as he had recently accepted an offer and would be working as an Assistant Public Defender in August 2004.

"Then, or about July 9, 2004, Bar Counsel received a second written notification from M & T Bank dated July 7, 2004 of an overdraft on Respondent's Attorney Trust Account as a result of presentment for payment in the amount of $10.71 by 'Global Pay Global STL.' M & T Bank honored the check, but it caused an overdraft on Respondent's Attorney Trust Account. As a result of the second overdraft, Respondent's Attorney Trust Account had a negative balance of $-623.58. On or about July 15, 2004, Bar Counsel received a third written notification from M & T Bank dated July 8, 2004 of an overdraft on Respondent's Attorney Trust Account as a result of presentment for payment by 'American Express Collection' in the amount of $5.00. M & T Bank again honored the check, but it caused an overdraft on Respondent's Attorney Trust Account, resulting in a negative balance of $-628.58. On July 15, 2004, Bar Counsel sent another letter to Respondent requesting his written response to the overdraft notices from M & T Bank of his Attorney Trust Account. The Respondent did not respond to that letter.

"On or about October 13, 2004, Bar Counsel received yet a fourth written notification from M & T Bank dated October 5, 2004 of an overdraft on Respondent's Attorney Trust Account as a result of presentment for payment in the amount of $5.00 by 'American Express Collection'. M & T Bank honored the check, resulting in an overdraft on Respondent's Attorney Trust Account and a negative balance of $-643.58. On October 14, 2004, the office of Bar Counsel sent a letter to Respondent requesting his written response and explanation to the multiple overdraft notices from M & T Bank of his Attorney Trust Account and additional bank

records of his escrow account. The Respondent did not respond to that letter. Additional letters were sent to the Respondent by the office of Bar Counsel requesting for his written response to the various overdraft notices and for additional information. The Respondent did not respond at all to those letters.

"Consequently, the Petitioner subpoenaed relevant bank records, including copies of monthly bank statements, canceled checks, and deposit slips, of Respondent's Attorney Trust Account. The records showed that from the period beginning January 2004 and November 2004, the Respondent used his Attorney Trust Account for personal and business matters. For instance, Respondent made payments to Pepco and Verizon from his Attorney Trust Account. Furthermore, automatic monthly debits were made from Respondent's Attorney Trust Account for payment to 'Global pay Global STL' and 'American Express Collection.'

### *"Conclusions of Law*

"This Court concludes that the Respondent, after depositing client funds in his Attorney Trust Account on behalf of his client Seymour Clarke to pay for child support obligation owed to Mr. Clarke's ex-wife, Jo–Ann Clarke, failed to properly hold said funds in escrow, thereby violating Maryland Rule of Professional Conduct (MRPC) 1.15(a). After the Respondent deposited $675 into his Attorney Trust Account, he knowingly withdrew monies from the account and reduced the balance below the amount to which Ms. Clarke was entitled and used said client monies for his personal purpose, thereby violating MRPC 8.4(a), (b), and (c), Maryland Rule 16–609 and Md. Bus. Occ. & Prof.Code Ann. §§ 10–306 and 10–606. The Respondent never replenished his Attorney Trust Account of the improperly withdrawn funds and never repaid M & T Bank for honoring the multiple overdrafts on his account. The Respondent's Attorney Trust Account maintained a negative balance. The Respondent further used his Attorney Trust Account to pay

personal and business debts, thereby violating Maryland Rule 16–607.

"The Respondent violated MRPC 8.1(b) when he knowingly and repeatedly failed to respond to lawful demands for information from the office of Bar Counsel.

"Taken in its totality, the Respondent's conduct was prejudicial to the administration of justice and therefore violated MRPC 8.4(d)."

(Alteration added.)

## II.

Recently in *Attorney Griev. Comm'n v. Lee,* 393 Md. 546, 558, 903 A.2d 895 (2006) we said:

The Court of Appeals exercises original jurisdiction over attorney discipline proceedings. This Court has the ultimate authority to decide whether a lawyer has violated the professional rules. We accept a hearing judge's findings of fact unless we determine that they are clearly erroneous. As to the hearing judge's conclusions of law, our consideration is essentially *de novo,* even where default orders and judgments have been entered at the hearing level.

Either party may file post-hearing written exceptions to the findings and conclusions of the hearing judge. Maryland Rule 16–758.[10] Maryland Rule 16–759(b)(2) provides:

(2) Findings of fact. (A) If no exceptions are filed. If no exceptions are field [sic], the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, in any.

---

10. Maryland Rule 16–758 provides, in pertinent part:

    (a) Notice of the filing record. Upon receiving the record, the Clerk of the Court of Appeals shall notify the parties that the record has been filed.

    (b) Exceptions; recommendations. Within 15 days after service of the notice required by section (a) of this Rule, each party may file (1) exceptions to the findings and conclusions of the hearing judge and (2) recommendations concerning the appropriate disposition under Rule 16–759(c).

(B) If exceptions are filed. If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses.

Thus, if no exceptions are filed timely, we accept the hearing court's findings of fact as established for the purposes of determining the appropriate sanction.

(Citations omitted.)

## III.

Neither Petitioner nor Respondent filed exceptions to the hearing judge's findings of fact and conclusions of law. Therefore, as discussed *supra,* for the purposes of determining the appropriate sanction, we accept Judge Rupp's findings of fact as established. Respondent violated MRPC 1.15(a), 8.1(b), 8.4(a), (b), (c), (d), Maryland Rules 16–607 and 16–609, and §§ 10–306 and 10–606 of the Business Occupations and Professions Article of the Maryland Code. Based upon our independent review of the record, and for the reasons set forth below, we agree with the conclusions of law and hold that Bar Counsel presented clear and convincing evidence of Respondent's wrongdoing.

We turn, then, to the appropriate sanction. The primary objective of this Court, in matters of attorney discipline, is "to protect the public, promote general and specific deterrence, and maintain the integrity of the legal profession." *Attorney Griev. Comm'n v. Roberts,* 394 Md. 137, 904 A.2d 557 (2006); *Attorney Griev. Comm'n v. Clark,* 363 Md. 169, 184, 767 A.2d 865, 873 (2001) ("The appropriate sanction depends upon the facts and circumstances of each particular case, including consideration of any mitigating factors."). Petitioner recommends that we impose the sanction of disbarment. Respondent has failed to make any recommendation. We adopt

Petitioner's recommendation and impose the sanction of disbarment.

In *Attorney Griev. Comm'n v. DiCicco,* 369 Md. 662, 802 A.2d 1014 (2002), the hearing judge determined that DiCicco violated MRPC 1.15(a) by failing to hold the property of his clients or third persons separate from his own, occasionally using his escrow account "as if it also served as his personal bank account." *Id.* at 675–76, 802 A.2d at 1021–22 (footnote omitted). This Court agreed with the hearing judge's finding that Respondent's usage of his escrow account as a personal bank account constituted a violation of MRPC 1.15(a). In the instant case, Respondent used his Attorney Trust Account for personal and business matters, making payments to Pepco, Verizon, Global pay Global STL, and American Express Collection. Here, we find, as we did in *DiCicco,* that Respondent's conduct frustrated the purpose of MRPC 1.15(a) and in so doing violated the rule.[11] Similarly, in using his Attorney Trust Account to pay personal and business debts, Respondent violated Md. Rule 16–607, requiring that "[t]he portion [. . . of funds] belonging to the attorney [. . .] shall be withdrawn promptly when the attorney [. . .] becomes entitled to the funds . . . ," and Rule 16–609 prohibiting an attorney from "pledg[ing] any funds required by these Rules to be deposited in an attorney trust account. . . . "

In the present case, Respondent withdrew client funds from his Attorney Trust Account, to which he was in no way entitled, in violation of Maryland Rule 16–607 and 16–609. *See Attorney Griev. Comm'n v. Herman,* 380 Md. 378, 844

---

**11.** Unlike the instant case, in *Attorney Griev. Comm'n v. DiCicco,* 369 Md. 662, 802 A.2d 1014 (2002), we held that there was no intentional misappropriation of client funds. In *DiCicco,* because there was an "absence of fraudulent intent and [. . .] lack of evidence that any client suffered financial loss resulting from Respondent's misconduct[ ]" we indefinitely suspended DiCicco with the right to seek reinstatement after 90 days. *Id.* at 688, 802 A.2d at 1028. In the instant case, unlike *DiCicco,* Respondent intentionally misappropriated client funds. Therefore, indefinite suspension is an inappropriate sanction. Because Respondent intentionally misappropriated client funds, we impose, instead, the sanction of disbarment.

A.2d 1181 (2004) (holding that it was a violation of Maryland Rules 16–607 and 16–609 for an attorney to borrow money in the form of a home equity loan, and to then deposit the borrowed money into his trust account in order to pay the amount owed to his client). Mr. Clarke had a child support obligation, requiring that he make a payment to his ex-wife, Ms. Clarke. Mr. Clarke entrusted Respondent with the payment amount, directing Respondent to make the payment to Ms. Clarke on his behalf. In turn, Respondent deposited the funds into his Attorney Trust Account. Respondent then issued a check to Ms. Clarke, but failed to maintain the funds in his Attorney Trust Account until the check cleared. Accordingly, Respondent violated § 10–306 of the Business Occupations and Professions Article of the Maryland Code when he used client funds for a purpose other than that for which the money was entrusted to him. In violating § 10–306, Respondent also violated § 10–606(b) which provides, "[a] person who willfully violates any provision of Subtitle 3, Part I of this title [...], is guilty of a misdemeanor...."

Moreover, MRPC 8.4(a) provides that "[i]t is professional misconduct for a lawyer to [...] violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct...." Because we determine that Respondent violated MRPC 1.15(a), we conclude that Respondent's conduct also violated MRPC 8.4(a). MRPC 8.4(b) prohibits a lawyer from "commit[ting] a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness...." We hold that when Respondent deposited client funds in his trust account, and intentionally failed to maintain those funds in his account, he committed a criminal act in violation of MRPC 8.4(b).

In *Attorney Griev. Comm'n v. Sheridan,* 357 Md. 1, 741 A.2d 1143 (1999), we held that Respondent violated MRPC 1.15(a), (b), and (c) and BOP § 10–306 and thus found that Respondent was dishonest within the meaning of MRPC 8.4(c). MRPC 8.4(c) prohibits an attorney from "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation." In *Sheridan,* Respondent, after receiving two settlement checks, deposited the checks in his escrow account but

failed to keep the collected funds separate, later withdrawing them and applying the money for his own professional and personal use. *Id.* at 18, 741 A.2d at 1153. We noted that "Respondent exhibited a lack of probity, integrity and straightforwardness in his conduct regarding his client and [. . .] his actions were dishonest. . . ." *Id.* at 26, 741 A.2d at 1156–57. In the case *sub judice*, we conclude, similarly, that Respondent violated MRPC 1.15(a) and § 10–306 of the Business Occupations and Professions Article. As noted *supra*, Respondent used client funds to pay personal and business debts. Accordingly, we find, as we did in *Sheridan*, that Respondent's actions were dishonest and in violation of MRPC 8.4(c)[12].

In addition, MRPC 8.1(b) requires that a lawyer, in connection with a disciplinary matter, must not "knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority. . . ." Bar Counsel sent numerous requests to Respondent requesting that he supply information necessary to its investigation. Bar Counsel sent requests to Respondent dated July 15, 2004 and October 14, 2004, to which he never responded. Respondent had an affirmative duty to respond to Bar Counsel's requests for information, yet failed to do so, in clear violation of MRPC 8.1(b).

---

**12.** In *Attorney Griev. Comm'n v. Sheridan*, Respondent was indefinitely suspended from the practice of law after having been found to have violated Rules 1.15(a), (b), and(c), and Rule 8.4(c) of the Rules of Professional Conduct and Business Occupations and Professions Article § 10–306. In *Sheridan*, we found "mitigating circumstances justifying a lesser sanction than disbarment." *Id.* at 35, 741 A.2d at 1161. Sheridan acknowledged that his conduct was, at times, unethical. Furthermore, we found it significant that the hearing judge "found that Respondent did not act intentionally when he violated his ethical duties." *Id.* By contrast, in the instant case, we are not presented with any mitigating circumstances nor are we led to believe that Respondent unintentionally violated his ethical duties. Therefore, although we find, as we did in *Sheridan*, that Respondent violated MRPC 1.15(a), Business Occupations Article § 10–306, and MRPC 8.4(c), the appropriate sanction is not indefinite suspension, rather, disbarment is appropriate.

In *Attorney Griev. Comm'n v. Cherry–Mahoi,* we said: "This Court [...] has found conduct constituting the misappropriation of client or third party funds to be 'prejudicial to the administration of justice' in violation of Rule 8.4(d)." 388 Md. 124, 159, 879 A.2d 58, 80 (2005). We noted that MRPC 8.4(d) is violated when an attorney's conduct "negatively impacts [...] the public's image or the perception of the courts or the legal profession...." *Id.* at 160, 879 A.2d at 80 (citation omitted). Because we find that Respondent's conduct constituted an intentional misappropriation of client funds, his conduct also violated MRPC 8.4(d).

Respondent violated numerous provisions of the MRPC, the Maryland Rules, and the Business Occupations and Professions Article of the Maryland Code. The most egregious violation committed by the Respondent was the intentional misappropriation of funds. *See Attorney Griev. Comm'n v. Williams,* 335 Md. 458, 644 A.2d 490 (1994). We have held that the "[m]isappropriation of funds by an attorney is an act infected with deceit and dishonesty and ordinarily will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction." *Attorney Griev. Comm'n v. Vanderlinde,* 364 Md. 376, 406, 773 A.2d 463, 480 (2001) (citation omitted); *see also Attorney Griev. Comm'n v. Sabghir,* 350 Md. 67, 84, 710 A.2d 926, 934 (1998). In the instant case, Respondent fails to offer any mitigating factors or any sufficiently compelling excuse for his egregious conduct.[13]

---

**13.** Respondent neither attended the hearing before Judge Rupp concerning this matter nor the proceedings in this Court. In addition, Respondent failed to file exceptions to the hearing judge's findings of fact and conclusions of law, or Petitioner's recommendation for disbarment. Assistant Bar Counsel reports to the Court that she spoke with Respondent the day before oral argument. During the course of the conversation, Respondent indicated that he would attend oral argument but would orally request a postponement of the oral argument because he intended to obtain representation in this matter. Respondent's intended counsel, however, required that he obtain a postponement before agreeing to represent him. Also, Respondent indicated to Assistant Bar Counsel that he had been sick in May and June, walked into the emergency room at the end of May and was not discharged until the

In light of the totality of the circumstances, and the severity of Respondent's misconduct, we conclude that disbarment is the appropriate sanction.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–515(C), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST ALPHONZO JEROME BUTLER.

end of June. Further, he said that he was, at some point, in the ICU and diagnosed with diabetes. On the day of oral argument, this Court received notification via facsimile that Respondent was being treated in the Emergency Department at Washington Adventist Hospital. The facsimile was written on "Washington Adventist Hospital Emergency Department" letterhead and signed by a registered nurse. It failed, however, to indicate Respondent's condition or diagnosis, or any other reason for this Court to find that this matter should not proceed as scheduled for oral argument.